No. 92-547

# IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

SISTER MARY JO McDONALD, REVEREND
JOHN M. KADING, JOSEPHINE E. McDONALD
HELEN WHERRY, ORABELLE EVANS, B.
MADDEN, DALE and SUE RAWLINGS,
VIRGINIA WALKER, PHILOMENA
MICHALSKY, MAURICE H. ROTH, JAMES
McDONALD, JANET R. LINDH, GERALDINE
CHRISTIAENS, JAMES and SHARON WILLIAMS,
JOHN and J.C. McELHENNY, R.A. and IRENE
BOKSICH, JAMES SHEA, BETTY L. BORCHERT,
PRISCILLA BORCHERT, RONALD and RANAE
BORCHERT, FRANCES ALTMAN, BOB MOODRY,
CHARLES E. REED, JUANITA and DAVID
MONGER, SHARON VINGOM, RICHARD ALCORN,
DAN DOLAN, LYNN RECKAS, RANDY and
SHIRLEY WINSTEAD, TOM TRACY, JOE VAN MEEL,
and all others similarly situated,
        Plaintiffs/Appellants,



   -v-

DENNIS R. WASHINGTON; and THE BUTTE
WATER COMPANY, a New Jersey Corporation,
        Defendants/Respondent.

APPEAL FROM:    District Court of the Second Judicial District,
              In and for the County of Silver Bow,
              The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James H. Goetz, Goetz, Madden & Dunn, Bozeman,
        Montana; Martin R. Studer, Bozeman, Montana

    For Respondent:

        Ronald B. MacDonald, Datsopoulos, MacDonald & Lind,
        Missoula, Montana

                       Submitted:  September 9, 1993

                         Decided:  November 4, 1993

Filed:

_____
               Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an interlocutory appeal in a class action lawsuit from the Second Judicial District Court, Silver Bow County. We affirm in part and reverse in part.

The appellants are past and present "consumers" of water provided by the Butte Water Company (BWC). The respondents are Dennis Washington, who became the sole shareholder of BWC in 1985, and the former owners of the BWC.

We restate the issues on appeal and cross-appeal:

I. Did the District Court err in defining the class to include water consumers who were billed for water service but exclude those who were not?

2. Did the District Court err in designating this lawsuit as a class action?

3. If this matter is classified as a class action, did the District Court err in the construct of the Notice?

The complaint states that appellants in the present action are residents of Butte, Montana, who rely on water from the BWC for their residential, commercial, institutional and public usage. Appellants claim injury from BWC's failure to provide adequate water and service to their various locations. Such injuries include alleged health problems associated with drinking BWC tap water and rate increases for water which is neither clean nor drinkable. Appellants also assert that they have increased expenses for purchasing bottled water in lieu of drinking tap water, increased energy bills from boiling water before use and

increased costs for purchasing juice, soda and other beverages as an alternative to tap water. Additionally, increased expenses for plumbing problems and appliance maintenance and repair due to the high concentration of sediment in the water allegedly plague BWC's consumers.

The respondents, according to the complaint, are

a New Jersey Corporation with its principal place of business in Butte, Montana, engaged in the business of collecting, storing, purifying and transporting water to businesses, individuals, and public and private organizations in the City of Butte, Montana and elsewhere. BWC is a supplier of water and operates a public water system as defined in the Montana Public Water Supply Act, MCA Title 75, Chapter 6, and associated rules....
    Defendant Dennis Washington is a resident of Montana, and is, and was at all times relevant to this complaint, a Director of the Butte Water Company, and its sole shareholder.

The named appellants filed a complaint on March 5, 1990, alleging breaches of various duties of the respondents in their provision of water service to the appellants. Additionally, they sought to have their lawsuit certified as a class action to include others similarly situated. A hearing was held in the Second District Court on February 12 and 13, 1991, and the court issued its Findings of Fact, Conclusions of Law and Memorandum on April 19, 1991.

In its memo, the trial court concluded that the appellants' action met the test for certification of a class action under Rule 23, M.R.Civ.P. The memo states that the appellants provided the following definition as the class it sought to certify:

All persons or entities who have been billed for water service in Silver Bow County, Montana by the Butte Water

3

Company for at least three consecutive months at any time subsequent to March 5, 1987 and prior to the final resolution of this action, and all persons residing at an address in Silver Bow County, as of the date of this motion [August 31, 1990], who receive Butte Water Company service.

Following issuance of the court's order, the appellants filed a motion to redefine the class on May 20, 1991. On August 3, 1992, subsequent to oral argument on the motion, the trial court issued its order denying the motion to redefine the class. The trial court stated in its order:

The court has previously indicated that the class would be all persons or entities who have been billed for water services in Silver Bow County, Montana. To expand the class to include individual members of households rather than the person purchasing the water service is unnecessary, overly broad, and will lead to confusion and delay in this matter.

In the Notice of Class Action Lawsuit, dated October 13, 1992, the trial court identified the class in the action as:

All persons or entities who have been billed for water service in Silver Bow County, Montana, by the Butte Water Company for at least three consecutive months at any time after March 5, 1987, and before December 31, 1991.

Upon motion of all parties, the trial court certified the Notice as a final order adjudicating: (1) the rights of the named plaintiffs, and the class they sought to represent, to participate in this class action lawsuit; and (2) all of the issues raised by the parties in motions and briefs regarding the notice to the class. Appellants filed an appeal on October 23, 1992, and respondents filed a cross-appeal November 6, 1992.

Our scope of review is whether the trial court's decision is an abuse of discretion. Murer v. State Fund (1993), 50 St.Rep.

4

344, 345, ___ Mont. ___, 849 P.2d 1036, 1037.

## I. DEFINITION OF THE CLASS

Appellants argue that when they filed their motion for class certification, they proposed the following definition:

> [A]ll persons or entities who have been billed for water service in Silver Bow County, Montana by the Butte Water Company for at least three (3) consecutive months at anytime subsequent to March 5, 1987, and prior to final resolution of this action, and all persons residing at an address in Silver Bow County, as of the date of this motion, who receive Butte Water Company water service.

The appellants further argue that in their brief in support of their motion for class certification they described the class as consisting of "individuals, their dependents, and organizations identifiable through records" of BWC. (Emphasis added.) They continue, stating that in the District Court's order of April 19, 1991, the trial court certified the class as defined by the appellants. It found that there were "between twelve and thirteen thousand individual hookups serving approximately 35,360 individuals as well as various public and private businesses and governmental agencies." Although the respondents never challenged the appellants' definition of the class nor requested that the definition be narrowed, the trial court defined the class in its Notice of Class Action Lawsuit to consist of only those water consumers billed for water service in Silver Bow County. The appellants contend that this classification narrows the definition the court approved in its order granting appellants' motion to certify the class and thus is clearly inconsistent.

The appellants further contend that the antiquated water

5

system, the poor water quality, and the many service interruptions have caused injuries which have been faced by billed and non-billed consumers alike. The named appellants include billed and non-billed consumers who suffered injuries typical of the entire class of consumers originally defined by the trial court.

The respondents counter appellants' contention that the trial court changed the definition of the class in its order denying the appellants' motion to redefine the class. They state that the orders are actually consistent because the court did not adopt the definition urged by the appellants in their motion for class certification. The court stated in its certification order that "[i]dentification of such members probably shall be found in customer lists held by defendants." This definition, respondents argue, is consistent with the order denying the motion to redefine the class which stated that "[t]o expand the class to include individual members of households rather than the person purchasing the water service is unnecessary, overly broad and will lead to confusion and delay in this matter."

Respondents further assert that the trial court refers to the appellants as "customers" and uses the term consumers in the sense that customers are the "consumers" in the business setting. Respondents also contend that only consumers who pay for the water can recover for monetary damages. One would have to be a bill-paying consumer, a customer, to have a basis to claim injuries because of interruptions in service, damage to plumbing and appliances and additional expenses incurred purchasing bottled

6

water and for boiling water.

Finally, respondents argue that the appellants themselves defined the class as customers. In their motion for class certification, the appellants defined the class as "all persons . . . who have been billed for water service . . . and . . . who receive Butte Water Company service." (Emphasis added.) Therefore, to be a member of the class, a person must meet two conditions: 1) must be billed for three consecutive months and 2) must reside in Silver Bow County as of the date of this motion. Additionally, respondents argue that the appellants also stated that the class members could be identified through BWC records, which would only consist of customers.

After a careful review of the record, we determine that the class definition used in the notice to class, which excludes non-billed customers, was arbitrarily changed. The complaint, the motion to certify the class and its supporting brief, and the transcript of the certification hearing, all allude to billed and non-billed customers or consumers (users). It makes no sense to exclude persons who allegedly drove to alternative water sources for drinkable water, bought alternative beverages for consumption, cleaned toilet bowls and tanks, suffered physical ailments and nursed others through physical ailments stemming from use of BWC water, from the class to be certified.

Sister Mary Jo McDonald testified at the hearing to certify the class that she spends $20 to $25 per month on juice and soda as alternatives to drinking tap water. Jim McDonald testified that he

7

and his wife, Janet Lindh, travel to Springhill twice a month to obtain drinking water. The complaint states that the trip to Springhill is approximately 80 miles roundtrip. Further, Jim and Janet both suffer from rashes after bathing and showering in BWC water. These are all problems suffered by billed and non-billed customers alike.

In the appellants' brief in support of its motion to certify the class, the appellants stated that "[t]he proposed class consists largely of individuals, their dependents, and organizations identifiable through records believed to be in the possession of Defendant Butte Water Company...." (Emphasis added.) Defendants did not contest the definition of the class as comprised of billed and non-billed users. In fact, their brief in opposition to the motion to certify the class stated that:

> [T]he Butte Water Company has 13,400 water hookups in the vicinity of the City of Butte, servicing 35,000 individuals and 1200 organizational users. It would appear that the size of the class would then be 36,200 individual and organizational claims.

Ultimately, the trial court ruled that a class action could be maintained in the lawsuit in its April 19, 1991 order which stated that the plaintiffs sought to certify as a class:

> All persons or entities who have been billed for water service in Silver Bow County, Montana by the Butte Water Company for at least three consecutive months at any time subsequent to March 5, 1987 and prior to the final resolution of this action, and all persons residing at an address in Silver Bow County, as of the date of this motion [August 31, 1990], who receive Butte Water Company service.

The court also stated that the class was so numerous that joinder of all members was impracticable. It described the class as

8

"between twelve and thirteen thousand individual hookups serving approximately 35,360 individuals as well as various public and private businesses and governmental agencies...." The class contemplated by the appellants, respondents and the trial court throughout all preliminary proceedings included all consumers, customers or users of BWC water, including billed and non-billed individuals. It was an abuse of discretion for the trial court to change the definition, thereby excluding individuals who claim to have suffered injuries because of BWC's allegedly inadequate service and poor water quality. No reasonable basis exists for excluding persons who claim to have suffered at the hands of BWC simply because one allegedly injured plaintiff is billed while another, suffering the same sort of injury, is not. Therefore, the trial court abused its discretion on this issue and we accordingly, reverse.

## II. CROSS-APPEAL - CLASS ACTION DESIGNATION

The trial court ruled that the instant case should be designated as a class action. We agree with its determination of this issue on the basis of our review.

> "[T]he judgment of the trial court should be given the greatest respect and the broadest discretion, particularly if ...he has canvassed the factual aspects of the litigation." This is so because the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation. Such a determination by the court will not be disturbed on appeal unless the party challenging it can show an abuse of discretion.

Doninger v. Pacific Northwest Bell, Inc. (1977), 564 F.2d 1304, 1309. (Citations omitted.) We note that Rules 23(a) and (b),

9

M.R.Civ.P., and the Federal Rules of Civil Procedure 23(a) and (b) are identical. We therefore find cases interpreting the federal rule to be instructive.

The respondents, however, argue that the trial court erred when it concluded that the present lawsuit should be adjudicated as a class action. They argue that the appellants cannot establish the elements necessary under Rule 23(a) and (b)(3), M.R.Civ.P., to certify a class action. The six elements include:

1. The class must be so numerous that joinder of all members is impractical.

2. There must be questions of fact or law common to the class.

3. The claims or defenses of the representative parties must be typical of the claims or defenses of the proposed class.

4. The representative parties will fairly and adequately protect the interest of the proposed class.

5. The questions of law or fact common to the members of the class predominate over questions of the individual members.

6. The class action is superior to other methods of adjudicating the controversy.

Rule 23(a) and (b)(3), M.R.Civ.P.

The appellants have the burden of establishing each of the six elements. Doninger, 564 F.2d at 1308. We conclude that the appellants did meet their burden of establishing the necessary elements to certify the present case. We discuss each of the elements in turn.

The first element requires that the class be so numerous that joinder of all members is impracticable. Rule 23(a)(1), M.R.Civ.P.

10

In the instant case, there are 12,000 to 13,000 "hookups" serving about 35,360 persons. We agree with the trial court that "[p]laintiffs clearly meet the first requirement of Rule 23(a)(1) in that the class is so numerous that joinder of all members is impractical."

The second element requires that there be questions of law or fact common to the class. Rule 23(a)(2), M.R.Civ.P. We agree that this element was also successfully established by the appellants. Respondents argue that there is not commonality because customers lived in different areas of Butte and their water sources may have been different from other class members. They also contend that customers suffered varying health effects from BWC water usage and that water was consumed for varying amounts of time with different reactions, so that the injuries suffered from one putative plaintiff to another are so different that there are not sufficient questions of law or fact common to the class. However:

> Rule 23(a)(2) does not require that every question of law or fact be common to every member of the class. The commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.". . . Courts that have analyzed Rule 23(a)(2) have generally given it a permissive application in a variety of substantive law areas so that the commonality requirement is usually found to be satisfied. (Citations omitted.)

Jordan v. County of Los Angeles (1982), 669 F.2d 1311, 1320.

In the instant case, all counts stem from the alleged failure of BWC to provide potable water and adequate service. We agree with the trial court which stated:

> The primary cause and common theory of these claims

11

is the same, i.e. an antiquated and poorly repaired water system. The court also notes that the claims of the twenty-four named plaintiffs, as well as the complaints of the consumers (Plaintiffs' Exhibit No. 12) show a recurrent theme of monetary damages from the consumers having to find alternative water sources.

We note in passing, that the health advisory of August 14, 1989, was appropriate evidence to consider in determining the commonality of questions of law or fact. The advisory was sent to all persons served by BWC and even though it was a strong recommendation and not a mandate, it was probative as to whether the class members shared common issues of law and fact. We note also, that Brown v. New Orleans Public Service, Inc. (La. 1987), 506 So. 2d 621, 623, can be distinguished because a major issue in that case involved comparative negligence and an intervening cause - cold weather which exacerbated the problems encountered by the plaintiffs.

The third element requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Rule 23(a)(3), M.R.Civ.P. We conclude that this requisite is established. The representative class is comprised of billed customers as well as non-billed customers as is the entire class. The claims of the representative class included the costs of alternative drinking supply or sources, increased power bills from having to boil water before consuming, increased expense to repair plumbing problems due to the particulate matter in the water, expenses for repair and maintenance of appliances (i.e. washing machine), and discolored and/or foul-smelling water emitted from the water faucets. These costs have been borne by the representative class as well as the class at large.

12

The typicality requirement is designed to assure that the named representative's interests are aligned with those of the class. Where there is such an alignment of interests, a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class. In this respect, the typicality prerequisite is closely related to both the 23(a)(2) requirement that there be common questions of law or fact and the 23(a)(4) requirement that the named plaintiff adequately protect the interests of the class.

The named plaintiff's claim will be typical of the class where there is a nexus between the injury suffered by the plaintiff and the injury suffered by the class. Thus, a named plaintiff's claim is typical if it stems from the same <u>event</u>, <u>practice</u>, or <u>course of conduct</u> that forms the basis of the class claims and is based upon the same legal or remedial theory. (Citations omitted.) (Emphasis added.)

<u>Jordan</u>, 669 F.2d at 1321. Here, the typicality requirement is met because the injury claimed to be suffered by the named plaintiffs is the same as that suffered by the class and all injuries stem from the same <u>course of conduct</u> allegedly displayed by the defendants; that is, negligence in its duty to provide adequate water and service.

The respondents make an argument that a survey they conducted indicated that the representative plaintiffs' interests were not typical of those of the class because the majority of class members surveyed did not wish to participate in the lawsuit. The trial court dispensed with this argument by stating that it was skeptical of the ability of a survey to accurately determine matters of public opinion. It also concluded that the survey could be intimidating to some people and may have been phrased to persuade those surveyed to respond in a negative manner to the lawsuit. We agree with the trial court and with the district court in Koger v. Guarino (1976), 412 F. Supp. 1375, 1379, which stated:

13

We therefore find that the fact that the class may contain individuals who are indifferent or even opposed to the class relief sought by the named plaintiffs does not mean that the claims of the named plaintiffs are not typical of those of the class or that they will not fairly and adequately protect the interests of the class. (Citation omitted.)

The fourth element necessary to establish a class action is whether the representative class will fairly and adequately protect the interest of the proposed class. Rule 23(a)(4), M.R.Civ.P.

Under Rule 23(a)(4), the named representative must "fairly and adequately protect the interests of the class." This requires that the named representative's attorney be qualified, experienced, and generally capable to conduct the litigation, and that the named representative's interests not be antagonistic to the interests of the class. (Citations omitted.)

Jordan, 669 F.2d at 1323. There is no dispute concerning the expertise and qualifications of the representatives' attorneys in this case. The question of whether the representatives' interests were antagonistic to the interests of the class was resolved in the discussion of Rule 23(a)(3), M.R.Civ.P., wherein we agreed with the trial court that the survey was unreliable insofar as it attempted to prove that most putative plaintiffs were against the lawsuit. The representatives' interests in potable water and adequate water service are coextensive with those of the remaining class members and therefore we conclude that the representative plaintiffs would fairly and adequately protect the interests of the class. Jordan, 669 F.2d at 1323.

The fifth requirement to establish certification as a class action is whether questions of law or fact common to the members of the class predominate over questions of the individual members.

14

Rule 23(b)(3), M.R.Civ.P. The respondents contend that the countless differences in damages for customers make the certification of a class "impractical." The appellants, however, counter that this determination revolves around issues of liability. Damages may always differ for the members but the issue of damages is not dispositive. Liability to all consumers is premised on BWC's failure to provide adequate service and quality water. The appellants further argue that this primary issue of liability for the entire class predominates over the individual issues of causation and damages for class members.

> With respect to the calculation of the amounts of damages, it would be necessary for each member of the class individually to prove the quantity of gasoline purchased at supracompetitive prices and the prices paid. Nevertheless, <u>it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate</u>. (Emphasis added.) (Citations omitted.)

Bogosian v. Gulf Oil Corp. (1977), 561 F.2d 434, 456. Similarly, the primary issue of liability here stems from BWC's failure to provide adequate water and service to its customers, although individual damages may vary. Therefore, the individual issues of causation and damages should not preclude certification as a class action. The trial court correctly determined that this necessary element is established.

The sixth, and final element necessary to certify a class action is whether a class action is superior to other methods of adjudicating the controversy. Rule 23(b)(3), M.R.Civ.P. To determine whether a class action is superior to other methods of

15

adjudication, Rule 23(b)(3) requires a consideration of four factors, namely:

A. the interest of members of the class in individually controlling the prosecution or defense of separate actions;
B. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
C. the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
D. the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3)(A) through (D).

The respondents contend that the individual questions in this case will consume an extensive amount of time, energy and expense yet still not give each member of the class its "day in court" because this case is actually many little cases which should be brought in small claims court. The appellants counter that there is no real alternative to a class action in this case. The individual members could not find an attorney who would take their individual cases because they are so minuscule as individual actions.

We hold that a class action is the superior method of adjudicating this controversy. As for the first factor, any member who wants more control in the action can enter an appearance through their own counsel under Rule 23(c)(2), M.R.Civ.P., or opt out of the class and intervene in the case. The second factor does not apply because there is no evidence of any other litigation involving members of the class although BWC has been involved in litigation with the state and federal governments regarding water quality. The third factor does not apply because there is no other

16

forum which class members have sought out in order to bring an action against BWC.

Finally, the trial court determined that "a class action is superior in this instance" because numerous plaintiffs have allegedly been harmed but no one person may have been damaged to such a degree that he may have sought to institute litigation on his own behalf. See Green v. Wolf Corporation (1968), 406 F.2d 291, 296. We reiterate that the trial court is in the best position to determine if the case is properly litigated as a class action. Doninger, 564 F.2d at 1309.

The Green court also put into perspective the need for class actions and the type of case which is best litigated as a class action:

> Equity has long recognized that there is need for a course which would redress wrongs otherwise unremediable because the individual claims involved were too small, or the claimants too widely dispersed. Moreover, early in the development of our civil procedures it became apparent that judicial efficiency demanded the elimination of multiple suits arising from the same facts and questions of law. Hence, the wise and necessary procedure was created by which a few representatives of a class could sue on behalf of others similarly situated, and be granted a judgment that would bind all. (Citation omitted.)

Green, 406 F.2d at 297. In the instant case, the claims involved would be unremediable without class action status because most are minor in and of themselves. In addition, the many claims arise from the same facts and questions of law. We conclude that this is a proper case for class action certification, and we affirm the trial court on this issue.

### III. PROPER NOTICE

17

As a final issue on cross-appeal, the respondents assert that the notice given by the trial court to the class is improper. They contend that one element of the notice is erroneous and another essential element is entirely omitted from the notice.

First, the notice states that the members "will not be required to pay any attorneys' fees or costs in the absence of a monetary recovery." However, respondents assert that class members may be liable for a portion of respondents' attorneys' fees in the event of a loss for appellants. The respondents further contend that since this is a contract action and the appellants have requested attorneys' fees, the respondents, as the other party, have the same right to recover attorneys' fees. Finally, they state that the potential members of the class should have this information before they decide whether they wish to participate in the class action.

The second error in the notice, insist the respondents, is that the District Court should have advised the potential class members that they have the option of not participating in the class action. Additionally, they do not have to bring their own action against the BWC. They assert that to omit this information is almost tantamount to encouraging the potential members of the class to initiate an action against BWC.

Appellants counter that there was no reason to advise the class members that they may be liable for attorneys' fees in the event of a loss by appellants nor that they may choose to forego participation in the class action if they so desire. Also,

appellants argue that respondents' position that it can recover attorneys' fees because the parties have a contract relationship which provides for reciprocal attorneys' fees is erroneous. The respondents base their argument on § 28-3-704, MCA, which gives both parties the right to recover attorneys' fees if there is an express statement in the contract which gives the parties the right to recover attorneys' fees.

Wright v. Schock (9th Cir. 1984), 742 F.2d 541, 545, is instructive and supports the appellants' position that members who remain in the class are not liable for the respondents' attorneys' fees, stating that "[a]bsent class members have no obligation to pay attorneys' fees and litigation costs, except when they elect to accept the benefit of the litigation." Lamb v. United Security Life Company (S.D. Iowa 1973), 59 F.R.D. 44, 48-49, expands on this proposition, concluding:

> Upon reconsideration, this Court is of the opinion that members of the class who do not opt out and do not appear especially by counsel of their own selection are not "parties" to the action. Accordingly, they would not be liable for any costs or expenses assessed against the representative parties plaintiff.
> Accordingly, the Court will order that the Notice to the class contain a provision so informing all members of the class. The Notice shall also advise all members of the class that if any recovery should be effected for the class, the Court may allow from such recovery reimbursement of plaintiffs' expenses and counsel fees....

Furthermore, the respondents' argument that under § 28-3-704, MCA, the members of the class could be liable for the respondents' attorneys' fees because this is a contract action is misplaced. Section 28-3-704, MCA, requires that the losing party pay

19

reasonable attorneys' fees _if_ there is an express right to recover attorneys' fees in the contract. No evidence of an express right in a contract was presented here. Therefore, the trial court did not err in stating that the members "will not be required to pay any attorneys' fees or costs in the absence of a monetary recovery."

Moreover, the trial court did not err in not including a statement that members of the class could "simply choose not to participate in any lawsuit against the Defendants." The Notice of Class Action Lawsuit stated that:

> If you opt out of the class, you will not be entitled to share in any monetary compensation which may ultimately be obtained. However, you _may_ file a separate lawsuit against the Defendants, or you may retain our (sic) own attorney and intervene in this lawsuit. (Emphasis added.)

The Notice also provided a form to fill out if a person wanted to be excluded from the class. The use of the permissive word "may," and the use of the form are enough to inform potential members of the class that they may opt out entirely if they prefer. The Notice provided was adequate in its notification to the class as to the rights and responsibilities of the members of the class. Accordingly, the trial court is affirmed as to this issue.

AFFIRMED IN PART AND REVERSED IN PART.

_____
Justice

We Concur:

_____
Chief Justice

20

_John Conway Harrison_

_William E. Hunt_

_Terry Trieweiler_

_____
Justices

_Thomas C. Honzel_

Honorable Thomas C. Honzel,
District Judge, sitting in
place of Justice Karla M. Gray

21

November 4, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


James H. Goetz
GOETZ, MADDEN & DUNN, P.C.
35 North Grand
Bozeman, MT 59715

MARTIN R. STUDER
Attorney at Law
12 N. Third Ave., Suite 1
Bozeman, MT 59715

Ronald M. MacDonald
DATSOPOULOS, MacDONALD, & LIND
201 West Main, Central Square Bldg.
Missoula, MT 59802

Alan L. Joscelyn
GOUGH, SHANAHAN, JOHNSON & WATERMAN
P.O. Box 1715
Helena, MT 59624-1715


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
　　Deputy