

DA 09-0578

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 117

HERMAN GONZALES, FAWN LYONS, KEN
LAUDATO, LAWRENCE WALKER, GARY
MANSIKKA, GARY GALETTI, GREG WHITING,
MARVIN KRONE, RICHARD BLACK, JIM KELLY,
CHRIS SOUSLEY, and all others similarly situated,

        Plaintiffs and Appellees,

   v.

MONTANA POWER COMPANY, NORTHWESTERN
CORPORATION, a Delaware Corporation, NORTHWESTERN
CORPORATION, a Delaware Corporation, as a Reorganized
Debtor, Subsequent to Its Plan Confirmation, Hereinafter Referred
to as NOR, NORTHWESTERN CORPORATION d/b/a
NORTHWESTERN ENERGY; PUTNAM AND ASSOCIATES,
INC., a Montana corporation, JOHN DOES II and III and JOHN
DOES IV thru XX,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Second Judicial District,
                 In and For the County of Butte-Silver Bow, Cause No. DV 98-253
                 Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

        For Appellant Montana Power Company:

            Joe Seifert, Keller, Reynolds, Drake, Johnson & Gillespie, P.C., Helena,
            Montana

        For Appellees:

            Lon J. Dale, Milodragovich, Dale, Steinbrenner & Nygren, P.C., Missoula,
            Montana

            Chris J. Ragar, Ragar Law Offices, Bozeman, Montana

Submitted on Briefs:  March 24, 2010

Decided:  May 25, 2010

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Herman Gonzales and other former employees (collectively the Class) of Montana Power Company (MPC), filed an action against MPC and its successors in interest, including NorthWestern Corporation (as a reorganized debtor), NorthWestern Energy, and Putnam and Associates. The Class alleged that MPC had manipulated worker compensation claims benefits dating back to 1977. The Class also claimed that MPC's successors in interest had followed MPC's practices of manipulating worker compensation claims. In essence, the Class maintained that MPC intentionally had manipulated and mishandled worker compensation claims, and that such practices had been pervasive throughout the organization and its employees. The Second Judicial District, Butte-Silver Bow County, granted the Class's motion to certify a class action and defined the class. We affirm.

## ISSUES

¶2    We review the following issues on appeal:

¶3    *Whether the District Court should have excluded the Class's claims for malice and punitive damages from its order granting the Class's motion to certify this matter as a class action.*

¶4    *Whether the District Court appropriately defined the class.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    A group of MPC workers filed a petition for a class action in the Workers' Compensation Court (WCC) against MPC. The workers sought payment for past-due "impairment awards" for workplace injuries. As a self-insurer, MPC administered its own

3

workers' compensation plan pursuant to statutory provisions. The WCC reviewed MPC's workers' compensation claims.

¶6 The WCC's review determined that approximately 117 class members had received a "medical impairment rating" for a MPC workers' compensation injury and had received workers' compensation benefits based on that rating. The WCC further determined that MPC significantly and unreasonably had delayed payment to these employees. The WCC ordered MPC to pay additional penalties. Approximately 104 claims resulted in penalties against MPC as of June 2008.

¶7 The WCC's ruling prompted the Class to file this action in District Court on December 18, 1998. The Class alleged that MPC had engaged in bad-faith handling and adjustment of the Class's workers' compensation claims. The Class maintained that MPC intentionally had manipulated their claims and benefits, and that NorthWestern Energy and all the other successors in interest had continued those same practices.

¶8 The Class eventually filed a request for class certification with the District Court. MPC argued that "questions of fraud, malice, and punitive damages were (and are) unique to each former MPC employee and not subject to class treatment." The District Court granted the Class's motion for certification on October 2, 2009.

¶9 The court excluded the Class's fraud claims from the class certification. The court noted that although "a Class Action will be the best method to adjudicate this matter, the Court is not convinced that the fraud allegations can be established through a mechanism such as a class action under Montana law." The court recognized that "[f]raud claims are

4

highly fact intensive." The court determined, however, that the Class had met its burden to proceed with a class action for its other remaining claims, including claims for actual malice and punitive damages. MPC appeals.

## STANDARD OF REVIEW

¶10 We review a district court's decision on a motion for class certification for an abuse of discretion. *Ferguson v. Safeco Ins. Co. of Am.*, 2008 MT 109, ¶ 10, 342 Mont. 380, 180 P.3d 1164; *see also Sieglock v. Burlington Northern Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 494; *McDonald v. Washington*, 261 Mont. 392, 396, 399, 862 P.2d 1150, 1152, 1154 (1993).

## DISCUSSION

¶11 *Whether the District Court should have excluded the Class's claims for malice and punitive damages from its order granting the Class's motion to certify this matter as a class action.*

¶12 MPC notes that the District Court properly recognized that the Class's fraud allegations were too "fact intensive" to be established in a class-action proceeding. MPC maintains that the District Court should have applied similar reasoning to the Class's claims for actual malice and punitive damages. In particular, MPC argues that punitive damages must be based on some individualized proof of harm as opposed to a finding of general liability to a class based on a pattern of conduct. MPC suggests that "[t]here is no apparent similarity–other than delay in the payment of benefits–in the actual damages incurred by any of [the Class]." We disagree.

5

¶13 The Class's claims for actual malice and punitive damages differ from the Class's claims for actual fraud. Section 27-1-221, MCA, sets forth the manner in which a court may award punitive damages. Subsection (2) provides that a defendant is guilty of actual malice if the defendant has knowledge of facts, or intentionally disregards facts, that create a high probability of injury to the plaintiff under two separate circumstances. Section 27-1-221(2), MCA. These circumstances include when a defendant who possesses actual knowledge, or intentionally disregards facts relating to it, "deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff," or "deliberately proceeds to act with indifference to the high probability of injury to the plaintiff." *Id.* A plaintiff need not show any proof of reliance to prevail on a claim for actual malice.

¶14 Section 27-1-221(4), MCA, by contrast, provides that "[a]ctual fraud exists only when the plaintiff has a *right to rely* upon the representation of the defendant and suffers injury as a result of that reliance." (Emphasis added.) The question of whether a party has a right to rely upon another's representation could create specific questions of proof best resolved in individual trials. The Class premises its actual malice claims, however, on MPC's conduct. The Class alleges that MPC consciously and intentionally disregarded the high probability of worker injury "by withholding information, failing to investigate, failing to inquire about maximum medical improvement and/or impairment ratings, and other benefits." MPC's behavior, and, in particular, MPC's system and method of handling workers' compensation claims—and not the potentially fact-specific issues of reasonable reliance by members of the class—constitutes the main focus of the Class's actual malice claims.

6

¶15 MPC also contends that class treatment for punitive damages "could offend the due process contemplated by this Court and the United States Supreme Court." MPC suggests that members of the class in this case might be situated differently to such a degree that no nexus would exist between each individual class member's actual harm and the punitive damages awarded. MPC's manner and practice of handling workers' compensation claims will constitute the predominant focus of the Class's claims for punitive damages. The District Court retains numerous tools to keep any punitive damage award within acceptable bounds so as not to offend the principles of due process. *See e.g. Seltzer v. Morton*, 2007 MT 62, ¶¶ 148-152, 165, 336 Mont. 225, 154 P.3d 561. The District Court did not abuse its discretion when it certified the Class's claims for punitive damages.

¶16 *Whether the District Court appropriately defined the class.*

¶17 The District Court defined the class as follows:

> MPC employees with compensable worker compensation claims, with permanent impairment ratings under an edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment, injured between January 1, 1970, and March 28, 1998, and not paid an impairment award until after December 10, 1997, and that such outlined above employee falls within one or more of the following categories:
>
> a) sustaining damage because of MPC's improper claims handling and adjusting procedures; or
>
> b) sustaining damages because of [NorthWestern Energy's] improper claims handling and adjusting procedures; or
>
> c) sustaining damages because of [reorganized debtor NorthWestern Corporation's] improper claims handling and adjusting procedures; or
>
> d) sustaining damages because of Putman's [sic] improper claims handling

7

and adjusting procedures that were the obligation of Putman [sic] as third-party administrator . . . and as an independent reviewer for MPC.

¶18   MPC argues that the District Court's class definition improperly "predetermines that each class member has sustained damages 'because of MPC's improper claims handling.' " MPC terms this class definition a "fail-safe," and maintains that a decision on the merits of each class member's claims determines class membership. MPC asserts that the "effect of such a definition is that any putative class member who fails to establish–in this proceeding–improper claims handling on the part of MPC is thereby excluded from the class and thus not subject to the binding or *res judicata* effect of this case."

¶19   The facts of this case belie MPC's concerns regarding the definition of the class. MPC focuses on subparagraph (a) of the District Court's class definition and ignores the first full paragraph. An employee must satisfy a number of requirements in order to be eligible as a class member. The employee must be a former MPC employee with a compensable workers' compensation claim. The compensable claim must have led to a permanent impairment rating. The employee must have been injured between January 1, 1970, and March 28, 1998. The injured employee must not have been paid an impairment award until after December 10, 1997. An employee must satisfy each of these five elements to be entitled to damages for improper workers' compensation claim treatment.

¶20   Any determination made by the court under subsection (a) through (d) of the class definition would be for purposes of apportioning liability among MPC and its successors in interest, including NorthWestern Corporation (as a reorganized debtor), NorthWestern

Energy, and Putnam and Associates.  The District Court did not create a "fail safe" when it established the boundaries of the class.  The District Court appropriately defined the class and retains discretion to adjust or modify the class as appropriate as the case progresses.  For example, M. R. Civ. P. 23(c)(1) provides that a court shall determine whether to allow a proposed class action to proceed "as soon as practicable after the commencement" of an action.  The court's order in this regard may be conditional, and, more importantly, "may be altered or amended before the decision on the merits."

¶21    Affirmed.

/S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ JIM RICE