JUSTICE MCKINNON,
concurring in part and dissenting in part, joined by JUSTICE RICE.
¶41 The Court reverses the District Court’s certification of a class claim-namely, “[wjhether the State of Montana breached its contract’-because this claims fails to satisfy the predominance requirement of Rule 23(b)(3). Opinion, ¶ 36.1 agree with this holding. Our conclusion that “factual questions must be answered on an individual basis before the plaintiffs will be in a position to establish liability,” Opinion, ¶ 34, is correct and is fatal to class certification under Rule 23(b)(3)’s requirement “that the questions of law or fact common to the class members predominate over any questions affecting only individual members.”
¶42 The Court, however, affirms the District Court’s certification of the class under Rule 23(a). Opinion, ¶ 36.1 dissent from this holding. I do not agree that the requirements of commonality and typicality have been met, and I also disagree with our conclusion that class certification is appropriate before a plausible common question of law or fact has even been identified. Although the Court reverses the District Court for certifying the question of whether the State breached its contract with the proposed class members, finding that this question “is incapable of being resolved on a classwide basis,” Opinion, ¶ 34, the Court nevertheless determines that commonality has been met because “[ajll class members are connected by the denial of a preauthorization request based upon the same [policy] exclusion,” Opinion, ¶ 19, and that typicality has been met because the Sangwins’ claim “is based on the same legal theory as the proposed class members’ claims,” Opinion, ¶ 26.[1] It is my opinion that the Court goes *144 astray in determining that a class action may be certified despite the absence of a common question of law or fact capable of generating an answer meaningful to the litigation. I cannot reconcile our analysis with that set forth in Wal-Mart Stores, Inc. v. Dukes, 564 U.S._, 131 S. Ct. 2541 (2011), and other decisions evaluating compliance with Rule 23’s requirements.
¶43 The State’s liability to the Sangwins for insurance benefits “arises from the terms of the insurance contract, and its contractual relationship with its insured.” Farmers Alliance Mut. Ins. Co. v. Holeman, 1998 MT 155, ¶ 21, 289 Mont. 312, 961 P.2d 114. “[I]f the language is clear and explicit this Court may not rewrite an insurance contract, but must enforce it as written.” Lee v. USAA Cas. Ins. Co., 2001 MT 59, ¶ 30, 304 Mont. 356, 22 P.3d 631. The Plan expressly excluded “experimental procedures or services,” which are defined in Chapter 9 of the Plan’s benefits as follows:
Treatment, which is considered experimental because it meets one of the following criteria:
1. Prescription drugs not approved by the FDA to be lawfully marketed for the proposed use, and it is not identified in the American Hospital Formulary Service, the AMA Drug Evaluation, or the Pharmacopoeia as an appropriate use.
2. It is subject to review or approval by an institutional review board (meaning that a hospital considered it experimental and put it under review to meet federal regulations, or review is required and defined by federal regulations, particularly those of the FDA or Department of Health and Human Services).
3. It is the subject of an ongoing clinical trial that meets the definition of a Phase 1, 2, or 3 clinical trial set forth in FDA regulations, regardless of whether it’s an FDA trial.
4. It has not been demonstrated through prevailing, peer-reviewed medical literature to be safe and effective for treating or diagnosing the condition or illness for which its use is proposed.
5. The predominant opinion among experts as expressed in the published authoritative literature is that further research is necessary in order to define safety, toxicity, and effectiveness (or effectiveness compared with conventional alternatives), and/or that usage should be substantially confined to research settings.
6. It is not a covered benefit under Medicare as determined by the Centers for Medicare and Medicaid Services (CMMS, formerly HCFA) because it is considered experimental, investigational, or unproven.
*145 7. It is experimental, investigational, unproven, or not a generally acceptable medical practice in the predominate opinion of independent experts utilized by the administrator of each plan.
8. It is not experimental or investigational in itself pursuant to the above and would not be medically necessary, but it is being provided in conjunction with the provision of a treatment, procedure, device, or drug which is experimental, investigational, or unproven.
¶44 McKinley Sangwin, a beneficiary under the Plan, was denied preauthorization because she was a minor and the procedure for which she sought coverage-artificial disc replacement-was considered experimental. It was explained to the Sangwins that artificial discs were not FDA-approved for patients under 18 and that the procedure was therefore excluded from coverage. The denial letter stated: “Per BCBSMT medical policy, the patient must be greater than 18 years of age and skeletally mature to qualify for benefits. Therefore, this is considered investigational. There are significant questions remaining about potential long-term complications in such a young patient.”
¶45 Of the 158 claims that BCBS denied because they were for experimental procedures, McKinley’s claim is the only one denied for a minor seeking an artificial disc replacement. Dr. M.E. Berner, BCBS’s Medical Director, provided his affidavit setting forth the variety of services, supplies, drugs, or devices that were denied because they were considered to be investigational:
Clinical Trial - Chemotherapy (MRI-Echo, ECG, CT Scan, Labs, UA); PET Scan (breast cancer, ovarian cancer, renal cell cancer, prostate cancer, bladder cancer, lung nodules); Ketamine; Gluco Watch; Hyperbaric Oxygen Pressurization; Mercury Detoxification and Chelation Therapy; Endocinch Procedure (gastroesophageal reflux disease); Group Therapy and Craniosacral Therapy; Outpatient Pain Clinic; Lengthen Roux Limb of Small Intestine; Cool Touch Laser Treatment (acne); Botox injections (myofacial pain syndrome, headache, migraines, neck pain, neck spasm, whiplash, back pain, neuromuscular pain, Raynaud’s disease, excessive salivation); Orthotripsy ESW (Plantar Fasciitis); Allergen Specific Food lgG Quantitative or Semiquantitive Testing; Neuromuscular Stimulator; Extracorporeal Shockwave Therapy; Hyperthermic Procedure; IV Therapy with Albumin; F-Scan; gait analysis; Phentermine; NM III 2 Channel Muscular Stimulator (muscle strengthening); Physical Performance Test; L4-5 Anterior Exposure Artificial Disc *146 Placement; Genetic Testing; Computerized Dynamic Posturography; Sclerotherapy; Physical Therapy (chronic pelvic pain syndrome and chronic prostatitis); Laser Treatment (Rosacea); Hormone Pellet Implant; Virtual Colonoscopy; High-Dose Indium-111 (Octreotide) Therapy; Ocular Motor Therapy; BRAV0 pH Study (catheter-free, wireless esophageal monitoring); Neurofeedback; X STOP Procedure; Meniett Device (Menieres disease); Nucleoplasty (Percutaneous Diskectomy) with Fluoroscopic Guidance; Sublingual Immunotherapy; LifeVest Automatic Wearable Defibrillation System; Pulsed Dye Laser Treatments (acne); MRI (breast); Second Radiofrequency Ablation and Travel (ablation of metastatic liver tumors); Avastin (ovarian cancer); Cognitive Therapy; CT Angiogram-Coronary (coronary arteries, atypical chest pain, abnormal stress test); Contrast-Enhanced Computed Tomographic Angiography; Phototherapeutic Keratectomy (PTK) (recurrent corneal erosions); Cervical Disk Replacement; Y-90 Mesenteric Mapping (cancer); Mobile Cardiac Outpatient Telemetry (MCOT) (event monitor); Synvisc Injection (hip joint); Oral Immunoglobulin Therapy (Norwalk Virus); Rituxan (Lupus); NESS L300 Foot Drop System Lower Extremity Stimulator Unit (muscle strengthening); Laparoscopic Cryoablation (renal mass); B-39 Study (breast cancer); Reclast (osteoporosis); Internal Radiation Therapy; Continuous Passive Motion Device (shoulder); Implantable Neurostimulator (occipital neuralgia); Thermography (breast screening); Posture Pump; Biofeedback (bladder outlet obstruction); Steriotactic Radiosurgery (metastic phyllodes tumor of breast); Remicade (arthritis); Magnetic Treatment (incontinence); Collection & Storage of Peripheral Blood Stem Cells (brain tumors); X-Stop (distraction/decompression device); Stereotactic Body Radiation Therapy (metastatic lung tumors); Artificial Disc; Excimer Laser Treatment (vitiligo); Avastin; BRCA Testing (genetic testing); Zometa (bisphosphonates); IMRT (radiation therapy); Vest Compression Device/Supplies (secretions and upper respiratory infection); Neuromuscular Electrical Stimulation Device (muscular weakness); Stereotactic Surgery (brain surgery to treat melanoma); BEST Clinical Trial; Sublingual Allergy Drops; IMRT (breast); Avastin and Abraxane (ovarian cancer); Transcatheter Closure of PFO; Stem Cell Transplant; Cetuximab (metastatic cholangiocarcinoma); Pharmacogenetic Testing; Occipital Nerve Stimulator.
*147 ¶46 I have set forth the above factual matters because we are required to “probe behind the pleadings” to the extent necessary to decide the certification question.” Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982). “[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable.” Falcon, 457 U.S. at 160,102 S. Ct. at 2372. Rigorous analysis is necessary because, as has been observed, “ ‘[a]ny competently crafted class complaint literally raises common “questions.” ’ ” Wal-Mart, 131 S. Ct. at 2551 (brackets in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)). Examples of such questions include: “Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?” Wal-Mart, 131 S. Ct. at 2551. Reciting these sorts of questions “is not sufficient to obtain class certification.” Wal-Mart, 131 S. Ct. at 2551. “Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury,” which “does not mean merely that they have all suffered a violation of the same provision of law”-or, as here, the same provision of a contract. WalMart, 131 S. Ct. at 2551 (internal quotation marks omitted). Because the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, WalMart, 131 S. Ct. at 2550, the class action device is appropriate only where “[t]he issues involved are common to the class as a whole” and “[t]hey turn on questions of law [or fact] applicable in the same manner to each member of the class,” Califano v. Yamasaki, 442 U.S. 682, 701, 99 S. Ct. 2545, 2557 (1979).
¶47 Here, although the District Court and this Court conclude that there exists “a uniform course of conduct by the State and BCBS in denying benefits based upon the ‘experimental for research’ exclusion,” Opinion, ¶ 19, alleging that the State uniformly applied a provision of the insurance contract, absent anything more, does not create a common question of law or fact. A common question of law or fact is not generated merely by the Sangwins’ allegations that they are part of a group of insureds who have had a particular contract provision applied adversely to them. Moreover, the Sangwins’ allegation that they were wrongfully denied coverage does not advance their claim that a class action is appropriate. No legal theory, programmatic exclusion, policy, pattern, practice, or conduct that could establish a wrong or liability to the class as a whole has been alleged. The Sangwins’ contention is indistinguishable from any insured who *148 alleges that she was wrongfully denied benefits under the Plan and who, for that reason alone, proposes a class action and asserts commonality by virtue of being an insured.
¶48 A review of the Plan’s applicable policy provisions and the reasons for denials clearly demonstrates that the language of the “experimental”-exclusion provision is both detailed and factually driven, and that the denials of the 158 claims were based on assessments of each individual illness and the type of procedure for which coverage was sought. The Court recognizes this fact in observing that, “[i]n order to make the determination of whether an individual’s claims were properly denied, each claim-together with its underlying documentation including the Consent Form and supporting affidavits-will have to first be separately analyzed.” Opinion, ¶ 33. Yet, contrary to the requirement of a “rigorous analysis,” Comcast Corp. v. Behrend, 569 U.S._, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks omitted), nothing has been alleged or demonstrated here which supports a determination by the District Court that a program or practice exists for the denials, thereby generating a common question.
¶49 The facts of this case are distinguishable from our prior cases in which we have held that a class action is appropriate. See McDonald v. Washington, 261 Mont. 392, 862 P.2d 1150 (1993) (common question of law as to whether the defendant breached a duty owed to class members to provide adequate water and service rendered class action appropriate); Ferguson v. Safeco Ins. Co. of Am., 2008 MT 109, 342 Mont. 380, 180 P.3d 1164 (class action appropriate to determine whether insurer programmatically breached the duty to conduct a made-whole determination prior to subrogation); Diaz v. Blue Cross & Blue Shield of Mont., 2011 MT 322, 363 Mont. 151, 267 P.3d 756 (whether employees’ made-whole rights were violated by the State’s programmatically failing to conduct a made-whole analysis before exercising subrogation rights was appropriate for class action); Chipman v. Northwest Healthcare Corp., 2012 MT 242, 366 Mont. 450, 288 P.3d 193 (whether an enforceable standardized group employment contract exists and what the parties’ legal obligations are under the contract would generate common answers applicable to all class members); Mattson v. Mont. Power Co., 2012 MT 318, 368 Mont. 1, 291 P.3d 1209 (whether the power company operated Kerr Dam unreasonably and caused unreasonable damage to shoreline properties was incapable of being resolved on an individual basis and was appropriate as a class action).
¶50 In all of these cases, there was a question of law or fact common *149 to each member of the class that advanced, to some degree, the litigation of each class member’s claim. In Ferguson and Diaz, the insurer’s obligation of to conduct a made-whole analysis prior to subrogation applied to everyone and existed whether or not the insurance contract addressed made-whole rights. The common question was generated by the insurer’s alleged programmatic conduct of subrogating first, ahead of the insured’s made-whole rights. In McDonald, everyone in the class was drinking the same water in Butte. In Mattson, the dam operator could select only one elevation at which to maintain the lake at any given time, and that elevation necessarily applied to and affected all shoreline properties simultaneously. In Chipman, common questions concerning the employment contract applied to everyone equally and concerned coverage issues that were not factually driven by individual circumstances. The answer to the various common questions advanced the litigation as a whole and, to some degree, each class member’s claim. The distinction to be drawn between these cases and the current dispute is that, here, the Sangwins have presented no common contention “that it is capable of class wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Wal-Mart, 131 S. Ct. at 2551. Merely being “connected” by the denial of a preauthorization request based on the “experimental” exclusion, Opinion, ¶ 20, does not generate a common question where, as the Court acknowledges, the question of whether class members’ claims were improperly denied under this exclusion must be made on an individual basis, Opinion, ¶¶ 33-34.
¶51 I understand the desire of the Plaintiffs to have this matter proceed as a class action. The denial of benefits for an admittedly successful medical procedure on behalf of a child cries out for a remedy and a method to prevent future hardship. Such a plea, however, without anything more than a denial under a particular policy exclusion, does nothing to further the requirements of Rule 23(a). In Falcon, for example, the Supreme Court acknowledged that “racial discrimination is by definition class discrimination.” 457 U.S. at 157, 102 S. Ct. at 2370. However, the Supreme Court concluded:
[T]he allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual’s claim that he has been denied a promotion on *150 discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual’s claim and the class claims will share common questions of law or fact and that the individual’s claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of petitioner’s promotion practices, (2) that petitioner’s promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner’s Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner’s other employment practices, such as hiring, in the same way it is manifested in the promotion practices.
Falcon, 457 U.S. at 157-58, 102 S. Ct. at 2370-71 (footnote omitted). ¶52 As indicated, the crux of this case is the lack of a question of law or fact common to the class, as required by Rule 23(a)(2), and whether the Sangwins’ claim is typical of the class claims pursuant to Rule 23(a)(3). Although the State argues the impropriety of class certification primarily under the headings of “typicality” and “predominance,” the State’s substantive arguments include discussions of “commonality.” In this regard, we have recognized that the requirements of Rule 23 tend to merge given the facts of the particular case. Opinion, ¶ 21.[2] The State, moreover, urges this Court to apply the commonality standard set forth in Wal-Mart rather than the less stringent commonality standard set forth in cases such as Ferguson. *151 We again avoid this issue by holding (incorrectly, in my view) that commonality is met under either standard. Opinion, ¶ 19; see also Jacobsen v. Allstate Ins. Co., 2013 MT 244, ¶ 33, 371 Mont. 393, 310 P.3d 452.
¶53 In any event, it is the responsibility of the trial court to determine whether all requirements of Rule 23(a) and (b) have been satisfied. Opinion, ¶ 15 (citing Comcast, 133 S. Ct. at 1432, and Wal-Mart, 131 S. Ct. at 2551). This Court must review a district court’s determinations despite our perception that a party has not disputed a particular requirement. Here, in my view, we create confusion in our class-action jurisprudence by, on one hand, reversing the District Court’s articulation of a common question of law or fact (breach of contract) while, on the other hand, affirming the District Court’s conclusion that commonality and typicality have been met. While certainly there may exist a factual scenario that substantiates the existence of commonality and typicality, but not predominance, that scenario cannot exist where, as here, the District Court has been reversed on its determination of the common question. In bifurcating the common question required by Rule 23(a)(2) from the common question that must predominate under Rule 23(b)(3)-an approach for which our Opinion cites no authority-I fear we have made it difficult for the District Court in this litigation to know how to proceed, have failed to provide clear guidance regarding the parameters of class-action litigation, and have created inconsistencies within Rule 23 itself.
¶54 Therefore, although I agree with the Court’s holding that Rule 23(b)(3)’s predominance requirement is not met here, I disagree with our conclusion that the commonality and typicality requirements of Rule 23(a)(2) and (a)(3) have been satisfied. While the Court remands “to allow the District Court to consider whether a particular issue may be certified for which individual questions would not predominate” pursuant to Rule 23(b)(3), Opinion, ¶ 36,1 believe the District Court necessarily must determine first, as a threshold matter, whether there is a question of law or fact common to the class under Rule 23(a)(2) and whether the Sangwins’ claim is typical of the class claims under Rule 23(a)(3). I would reverse the District Court’s certification order in its entirety and remand accordingly.
¶55 I concur and dissent.
JUSTICE RICE joins the Concurrence and Dissent of JUSTICE McKinnon.

 Other than breach of contract, I have been unable to discern any other legal theory offered by the Sangwins.

 See also Falcon, 457 U.S. at 157 n. 13, 102 S. Ct. at 2370 n. 13 (“The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.”); McDonald, 261 Mont. at 402, 862 P.2d at 1156 (typicality is closely related to both commonality and adequacy of representation).