JUSTICE WHEAT
delivered the Opinion of the Court.
¶ 1 The First Judicial District Court, Lewis and Clark County, denied Jeannette Diaz (Diaz) and Leah Hoffmann-Bernhardt’s (HoffmannBernhardt) motion for class certification and concluded third-party administrators of the State of Montana’s (State) employee healthcare benefit plan are not subject to made-whole laws established under § 2-18-901 to -902 and 33-30-1101 to -1102, MCA. Diaz and Hoffmann *153 Bernhardt appeal.[1]
¶2 We affirm in part and reverse in part and remand this matter to the District Court for further proceedings consistent with this Opinion.
BACKGROUND
¶3 The State provides a self-funded employee healthcare benefit plan for its employees and their dependents. The State plan was established under Title 2, chapter 18, part 8, MCA, to “provide state employees with adequate group hospitalization, health, medical, disability, life, and other related group benefits in an efficient manner and at an affordable cost.” Section 2-18-808, MCA. Approximately 32,000 members are currently enrolled in the State plan. Funding for the State plan is derived from employee and employer contributions. Blue Cross and Blue Shield of Montana (BCBS) and New West Health Services (New West) (collectively TPAs”) administer the State plan and receive a flat fee per member for their services. BCBS and New West also independently administer and operate their own healthcare policies for profit.
¶4 Diaz was injured in an automobile collision caused by an insured negligent tortfeasor. Diaz was insured for medical expenses through the State plan, which BCBS administered. The tortfeasor’s insurer accepted liability and paid policy limits, which included payment of Diaz’s medical expenses. Diaz alleges BCBS violated her made-whole rights when it refused to pay Diaz for her medical expenses that had already been paid by the tortfeasor’s insurer.
¶5 Like Diaz, Hoffmann-Bernhardt was injured in an automobile collision caused by an insured negligent tortfeasor. The tortfeasor’s insurer paid some of Hoffmann-Bernhardt’s medical expenses directly to her medical providers. New West, the administrator of HoffmannBernhardt’s State plan, also paid Hoffmann-Bernhardt’s medical providers for her medical expenses. Subsequently, the medical providers reimbursed New West for the medical expenses it had paid. Hoffmann-Bernhardt submitted a claim to New West, requesting that it pay her the money her medical providers reimbursed New West. Hoffmann-Bernhardt claims New West’s failure to pay her the reimbursement violates her made-whole rights.
¶6 Diaz and Hoffmann-Bernhardt filed suit against the State, BCBS, *154 and New West for allegedly violating their made-whole rights by failing to conduct a made-whole analysis before exercising subrogation rights. Diaz and Hoffmann-Bernhardt moved for class certification pursuant to M. R. Civ. P. 23, seeking to include in the lawsuit individuals who had their benefits reduced under the State plan, as well as individuals who had their benefits reduced under policies independently issued and administered by BCBS and New West. Diaz and Hoffmann-Bernhardt requested a declaratory ruling that the State’s, BCBS’s, and New West’s practices violate Montana’s made-whole laws; an injunction requiring the State, BCBS, and New West to calculate and pay amounts wrongfully withheld, plus interest; and an order enjoining the State, BCBS, and New West from continuing to violate the made-whole rights of their insureds. The District Court denied class certification. Diaz and Hoffmann-Bernhardt appealed to this Court.
¶7 In order to resolve the class certification issue, this Court remanded the matter to the District Court to determine whether Montana’s made-whole laws apply to TPAs, such as BCBS and New West. The District Court concluded they did not. Diaz and HoffmannBernhardt now challenge this ruling and appeal the following issues:
¶8 Issue One: Did the District Court err in determining the made-whole laws codified in § 2-18-901 to -902 and 33-30-1101 to -1102, MCA, do not apply to TPAs?
¶9 Issue Two: Did the District Court err in denying class certification?
STANDARDS OF REVIEW
¶10 This Court reviews a district court’s conclusions of law for correctness. Shattuck v. Kalispell Regl. Med. Ctr., Inc., 2011 MT 229, ¶ 8, 362 Mont. 100, 261 P.3d 1021. We review a district court’s ruling on a motion to certify a class for an abuse of discretion. Ferguson v. Safeco Ins. Co. of Am., 2008 MT 109, ¶ 10, 342 Mont. 380, 180 P.3d 1164. A district court commits an abuse of discretion when it “acts arbitrarily without conscientious judgment or exceeds the bounds of reason.” State v. Essig, 2009 MT 340, ¶ 14, 353 Mont. 99, 218 P.3d 838. In class certification cases, “[t]he judgment of the [district] court should be accorded the greatest respect because it is in the best position to consider the most fair and efficient procedure for conducting any given litigation.” Sieglock v. Burlington N. Santa Fe Ry. Co., 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495.
*155 DISCUSSION
¶11 Issue One: Did the District Court err in determining the made-whole laws codified in §§2-18-901 to -902 and 33-30-1101 to -1102, MCA, do not apply to TPAs?
¶12 The made-whole laws applicable to this appeal are found in two separate locations in the MCA: Title 2, chapter 18, part 9, which concerns the State employee benefit plan, and Title 33, chapter 30, part 11, which addresses insurance in the context of “health service corporations.” The statutes are indistinguishable in terms of purpose, but are not identically written.
¶13 The District Court examined the contracts between the TPAs and the State and concluded the subrogation statutes did not apply to the TPAs because, in fulfilling their administrative duties under their respective contracts, they did not act as “insurers” or ‘health care corporations” within the meaning of the subrogation statutes. Specifically, the District Court determined the TPAs merely process claims for a flat fee; they pay claims with State funds; and the State, because it makes the final decision regarding claims, is the party ultimately liable to insureds. The District Court also rejected Diaz and Hoffmann-Bernhardt’s argument that the TPAs are liable for violating made-whole laws under a third-party beneficiary theory. We address the subrogation statutes and third-party beneficiary argument in turn below.

Subrogation Statutes

¶14 ‘The role of the judge in statutory interpretation ‘is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.’ ’’ Micone v. Dept. of Pub. Health & Human Servs., 2011 MT 178, ¶ 12, 361 Mont. 258, 258 P.3d 403 (quoting § 1-2-101, MCA). Where the plain language of the statute is clear and unambiguous, no further statutory interpretation is necessary. Micone, ¶ 12.
¶15 As an initial matter, we note Title 33 does not apply to the State employee healthcare benefit plan. Section 33-1-102(7), MCA (‘This code does not apply to the state employee group insurance program established in Title 2, chapter 18, part 8 ....”). Accordingly, because the TPAs’ administration of the State plan is at issue here, the subrogation provisions contained in §§33-30-1101 to -1102, MCA, are inapplicable.
¶16 Under § 2-18- 902(4), MCA, any right of subrogation is the insurer’s. Pursuant to § 2-18-901, MCA, the insurer, “to the extent necessary for reimbursement of benefits paid to ... the insured,” has a right of subrogation. (Emphasis added.) Thus, the party who pays the *156 claim is the insurer who possesses the subrogation right. Granting a subrogation right to the party expending funds is consistent with the policy behind our subrogation statutes that “absent repayment of the insurer!,] the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss.” Skauge v. Mt. Sts. Tel. & Telegraph Co., 172 Mont. 521, 524-25, 565 P.2d 628, 630 (1977).
¶17 The treatment of the term “insurer” in Title 2 and the factual circumstances present here, as evinced in the TPAs’ contracts, clearly establish that the State is the insurer, not the TPAs. Under the BCBS contract, BCBS immediately pays claims from its personal account, but it is reimbursed by the State on a daily basis. Under the New West contract, New West draws directly from State funds to pay claims. The State is the party who provides the funds to pay claims and who ultimately accepts reimbursements from medical providers and/or does not pay medical providers who have already received payments from tortfeasors’ insurance companies. The State also makes the final decision regarding claim denial. While the TPAs manage State funds as administrators of the State plan, they do not provide or retain the funds. Therefore, they are not insurers within the meaning of §§2-18-901 to -902, MCA, and, in this case, are not independently liable for violating the made-whole laws.

Third-Party Beneficiary Theory

¶18 Not everyone who may benefit from performance, or who may suffer from non-performance, of a contract between two other persons is permitted to enforce the contract. Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts vol. 13, §37:7, 29 (4th ed., West 2000). A stranger to a contract cannot sue for breach of contract unless he or she is the intended third-party beneficiary of that contract. Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC, 2009 MT 416, ¶ 46, 353 Mont. 534, 221 P.3d 675. This Court, relying upon the Restatement (Second) of Contracts §302 (1981), has described an intended third-party beneficiary as follows:
“(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give *157 the beneficiary the benefit of the promised performance.”
Dick Anderson Constr., ¶ 47 (quoting Restatement (Second) of Contracts §302(l)(a)-(b)).
¶19 ‘Performance of a contract will often benefit a third [party,]” but unless the contracting parties intended to benefit the third party, the third party’s status is that of an incidental beneficiary. Restatement (Second) of Contracts § 302 cmt. e. ‘[T]here is a plain distinction between a promise, the performance of which may benefit a third party, and a promise made expressly for the benefit of a third party.” McKeever v. Or. Mortg. Co., 60 Mont. 270, 273-74, 198 P. 752, 753 (1921) (internal quotation omitted).
¶20 Diaz and Hofimann-Bernhardt argue the contracts between BCBS and the State and the State and Montana Association of Health Care Purchasers, who in turn contracted with New West, exist to benefit State employees and, as such, give employees a right to sue either or both the State and the TPAs when their made-whole rights are violated. Diaz and Hofimann-Bernhardt rely upon Gardner & White Consulting Servs., Inc. v. Ray, 474 S.E.2d 663 (Ga. App. 1996), and Harman v. MIA Serv. Contracts, 260 Mont. 67, 858 P.2d 19 (1993), in support of their claim that contracts between an insurer and a TPA create a third-party beneficiary contract, allowing insureds to sue either party to the contract.
¶21 Both cases are distinguishable from the present case. Although the Gardner court determined that an employee was a third-party beneficiary of a contract between a TPA and self-funded county benefit plan, Gardner, 474 S.E.2d at 665-66, subsequent cases have clarified Gardner, noting that a plaintiff cannot assume he or she is a third-party beneficiary merely because he or she has benefitted from a contract between an insurer and a TPA. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Instead, the plaintiff must be able to “show from the face of the contract that it was intended to benefit [him or] her.” Gilmour, 382 F.3d at 1315.
¶22 In Harman, the administrator had exclusive authority to approve or disapprove claims under a vehicle service contract, assisted automobile dealerships in marketing service contracts, and received a portion of the premiums from service contracts sold. Harman, 260 Mont. at 69, 858 P.2d at 21. Based on the extent of the administrator’s involvement, this Court concluded Harman, the owner of a vehicle service contract, was a third-party beneficiary, noting “since [the administrator] has exclusive authority to approve or disapprove claims under the contract... it is appropriate to recognize [Harman’s] right to *158 performance in order to effectuate the intentions of the parties ....” Harman, 260 Mont. at 72, 858 P.2d at 23.
¶23 Here, unlike the administrator in Harman, the TPAs do not have exclusive authority in administering claims under the State plan. The State and the TPAs contracted for administrative services for the State’s benefit in operating its employee healthcare benefit plan. Any benefits insureds receive from the TPAs’ expertise in administering claims is merely incidental.
¶24 We conclude BCBS and New West, in their capacities as TPAs in the present case, are not subject to the made-whole laws under either the subrogation statutes or under a third-party beneficiary theory.
¶25 Issue Two:Did the District Court err in denying class certification?
¶26 Although we have concluded that neither BCBS nor New West are subject to the made-whole laws under the facts of this case, the question of whether class certification is appropriate with respect to Diaz and Hoffmann-Bemhardt’s claims against the State remains to be resolved.
¶27 The propriety of a class action is governed by Rule 23 of the Montana Rules of Civil Procedure. M. R. Civ. P. 23. The threshold inquiry into whether a class action is appropriate requires analysis of Rule 23(a)’s four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Sieglock, ¶ 10. The party seeking certification bears the burden of establishing that each element of Rule 23 is met. McDonald v. Washington, 261 Mont. 392, 400, 862 P.2d 1150, 1155 (1993). Failure of any one of Rule 23(a)’s prerequisites is fatal to class certification. Murer v. Mont. St. Compen. Mut. Ins. Fund, 257 Mont. 434, 437, 849 P.2d 1036, 1037 (1993). After a court determines the Rule 23(a) prerequisites are satisfied, its certification analysis shifts to Rule 23(b). M. R. Civ. P. 23(b). Therefore, we must initially turn our inquiry to Rule 23(a)’s four prerequisites.
¶28 Before we do so, however, we have to address arguments by the State and the TPAs that before this Court considers the Rule 23(a) prerequisites, it must first find the class is precisely defined and the identified class representatives are members of the class. Diaz and Hoffmann-Bernhardt describe the members of their proposed class as (1) insureds under health insurance plans and policies administered or operated by the State and the TPAs; (2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and (3) who have not been made *159 whole for their damages because the State and the TPAs have programmatically failed to pay benefits for their medical costs.
¶29 The State and the TPAs argue Diaz and Hoffmann-Bernhardt’s class definition is amorphous and has evolved throughout this litigation and, therefore, should be rejected. They rely upon a federal case,[2] Polich v. Burlington N., Inc., 116 F.R.D. 258, 261 (D. Mont. 1987), which provides that before delving into the rigorous analysis required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class.
¶30 First, given our decision under Issue One, it is clear the members of the class will be individuals insured under the State plan, just like Diaz and Hoffmann-Bernhardt. Second, the prerequisites set forth in Rule 23(a) sufficiently define a class in this case, and any additional definition by this Court, at this time, is unnecessary. With the class description Diaz and Hoffmann-Bernhardt have provided this Court, we now turn our discussion to Rule 23(a)’s prerequisites.
1. Rule 23(a)

Numerosity

¶31 The element of numerosity “requires that the class be so numerous that joinder of all members is impracticable.” McDonald, 261 Mont. at 400, 862 P.2d at 1155; M. R. Civ. P. 23(a)(1). ‘Mere speculation as to satisfaction of the numerosity requirement is not sufficient. Rather, plaintiffs must present some evidence of, or reasonably estimate, the number of class members.” Polich, 116 F.R.D. at 261. The District Court determined this requirement was met based upon testimony that hundreds of State insureds had been in car crashes over the past eight years. Our review of the record convinces us that the District Court was correct in determining the numerosity element is met.

Commonality

¶32 ‘ÍCjlass litigation must present a common issue of law or fact.” Ferguson ¶ 16. Regardless of differences among class members, the commonality requirement is met when a single issue is common to all. Ferguson, ¶ 16. Commonality is not a “‘stringent threshold and does not impose an unwieldy burden on plaintiffs.... [A]ll that is necessary ... is an allegation of a standardized, uniform course of conduct by *160 defendants affecting plaintiffs.’ ” Ferguson, ¶ 26 (quoting LaBauve v. Olin Corp., 231 F.R.D. 632, 667-68 (S.D.Ala. 2005)).
¶33 The District Court determined this element was not met because a common issue of law or fact did not exist; instead, individualized made-whole assessments were required in each case:
While a determination will need to be made in each case as to whether Montana common law relating to subrogation has been violated, that determination will require separate mini-trials for each Plaintiff which will include potential determinations as to whether: policy limits were paid by the automobile liability insurer; whether future medical treatment may be required which may necessitate expert testimony from medical practitioners; whether a Plaintiff had other automobile coverage such as medical payments and underinsured coverage; whether the third-party tortfeasor had assets available to contribute to the settlement; and, the amount of medical benefits which were withheld by the State plan ... and how much of that amount will be necessary to make the insured whole.
¶34 In Ferguson, this Court concluded the commonality requirement was satisfied because a common issue of fact and/or law existed regarding whether the insurer had programmatically breached the made-whole laws by failing to make a made-whole determination before exercising its subrogation rights. Ferguson, ¶¶ 26-28. Similarly, the class members here share a common issue of fact and/or law as to whether the State is programmatically breaching Montana’s made-whole laws by exercising the following exclusion:
The following services and expenses are not covered:
5. Expenses that [an insured] is entitled to have covered, or that are paid under an automobile insurance policy, a premise liability policy, or other liability insurance policy. This includes but is not limited to, a homeowner’s policy or business liability policy, or expenses that [an insured] would be entitled to have covered under such policies if not covered by the State Plan.
Thus, we conclude that in this case, just as in Ferguson, the commonality requirement imposed by Rule 23(a)(2) is met.

Typicality

¶35 The typicality requirement under Rule 23(a)(3) is designed to ensure that the named representatives’ interests are aligned with the class’s interests, the rationale being that “ ‘a named plaintiff who vigorously pursues his or her own interests will necessarily advance *161 the interests of the class.’ ” McDonald, 261 Mont. at 402, 862 P.2d at 1156 (quoting Jordan v. Co. of L. A., 669 F.2d 1311, 1321 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103 S. Ct. 35 (1982)). The typicality requirement generally prevents plaintiffs from bringing a class action against defendants with whom they have not had any dealings. Murer, 257 Mont. at 438, 849 P.2d at 1038. Typicality is met if the named plaintiffs claim “‘stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory.’ ” McDonald, 261 Mont. at 402, 862 P.2d at 1156 (quoting Jordan, 669 F.2d at 1321). The event, practice, or course of conduct need not be identical. Polich, 116 F.R.D. at 262. Similar to the test for commonality, the typicality requirement is not demanding. See Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 884 (6th Cir. 1997).
¶36 The District Court determined Diaz and Hoffmann-Bernhardt failed to establish typicality because the made-whole determination would have to be made on an individual basis. As discussed under the commonality requirement, the State’s practice of employing its exclusion to third-party liability coverage constitutes an event, practice, or course of conduct that Diaz and Hoffmann-Bernhardt share with the class, thereby satisfying the typicality element.
¶37 In addition, the State and the TPAs argue the typicality element is not met because Diaz and Hoffmann-Bernhardt do not have claims against all of the named defendants, yet they have elected to sue multiple defendants who operate under distinct types of health plans. Our decision in Issue One, however, has rendered this argument moot, as Diaz and Hoffmann-Bernhardt’s claims are restricted to the State only and, therefore, are not against defendants with whom they are not insured. Therefore, the typicality element is present.

Adequate Representation

¶38 The fourth requirement under Rule 23(a) allows certification only where the representative parties will fairly and adequately protect the interests of the class. M. R. Civ. P. 23(a)(4). This element requires that the named representative’s attorney be qualified and competent and able to conduct the litigation and “‘that the named representative’s interests not be antagonistic to the interests of the class.’ ” McDonald, 261 Mont. at 403, 862 P.2d at 1156 (quoting Jordan, 669 F.2d at 1323).
¶39 The State and the TPAs do not challenge the competency of Diaz and Hoffmann-Bernhardt’s attorneys. Instead, they reiterate their typicality argument concerning the named plaintiffs not having claims against all defendants. Because we resolved this question in our *162 discussion of the typicality element, we conclude Diaz and HoffmannBernhardt would fairly and adequately protect the interests of the class.
2. Rule 23(b)
¶40 Having determined that Diaz and Hoffmann-Bernhardt have sufficiently established the Rule 23(a) requirements, we now turn to Rule 23(b), which provides in relevant part:
(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to the findings include:
(A) the class members’ interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.
M. R. Civ. P. 23(b)(2)-(3).
¶41 Diaz and Hoffmann-Bernhardt sought class certification under Rule 23(b)(2) or, in the alternative, Rule 23(b)(3). The District Court concluded certification was precluded under Rule 23(b)(2) because whether the State can exercise its exclusion to require tortfeasors’ insurers to pay first, thereby lowering the amount the State pays its insureds, is a question that requires individualized made-whole assessments as to each insured. The District Court further determined Rule 23(b)(3)’s predominance and superiority requirements were not satisfied, as individualized issues of proof predominated over common issues, and potential class members may be better off bringing individual claims.

Rule 23(b)(2)

¶42 The United States Supreme Court recently ruled that F. R. Civ. P. 23(b)(2) does not authorize class certification when each class *163 member would be entitled to an individualized award of monetary damages, or when each class member would be entitled to a different injunction or declaratory judgment against the defendant. Wal-mart Stores, Inc. v. Dukes,_U.S._, 131 S. Ct. 2541, 2557 (2011). The key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted-fehe notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.” Wal-mart Stores, Inc., _U.S. at_, 131 S. Ct. at 2557 (internal quotation omitted).
¶43 Diaz and Hoffmann-Bernhardt argue the class is certifiable under Rule 23(b)(2) because a single question affects all class members: Can the State, in compliance with the subrogation laws, programmatically exercise its exclusion before conducting a made-whole analysis? Diaz and Hoffmann-Bernhardt rely upon Ferguson, where this Court concluded Rule 23(b)(2) certification was appropriate, claiming the District Court committed the same errors here in denying Rule 23(b)(2) certification as the district court in Ferguson. We agree.
¶44 There, Ferguson’s insurer subrogated against a third-party tortfeasor’s insurance carrier, recovering some of the amounts it had paid Ferguson for property damages incurred in an automobile crash. Ferguson sued, claiming her insurer did not conduct a made-whole analysis before it subrogated against her recovery. Ferguson, ¶¶ 4-5. In her motion for class certification, Ferguson requested declaratory relief that her insurer breached its insurance contract by failing to conduct a made-whole analysis before it subrogated against her recovery. Assuming she succeeded in her declaratory action, Ferguson sought an injunction requiring the insurer to return to her any amounts it had illegally subrogated until it completed the requisite made-whole adjustments. Ferguson, ¶ 33. The district court denied class certification, reasoning the action would require factual determinations regarding made-whole entitlements and, thus, was not suitable for a class action. Ferguson, ¶¶ 12-14. We reversed the district court, noting fact-specific determinations were outside the context of the declaratory and injunctive relief Ferguson sought, as Ferguson only requested that amounts unlawfully withheld from the class members be returned until the insurer conducted a made-whole analysis. Ferguson, ¶¶ 33-37.
¶45 The District Court distinguished the present case from Ferguson on its facts. The District Court determined that unlike in Ferguson, where the insurer’s programmatic exercise of its subrogation rights was the primary issue, this case required individualized made-whole *164 determinations as to each class member.
¶46 In determining whether to certify a class, “a district [court] should not assess any aspect of the merits unrelated to a Rule 23 requirement.” Mattson v. Mont. Power Co., 2009 MT 286, ¶ 67, 352 Mont. 212, 215 P.3d 675 (internal quotation omitted). ‘“[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.’ ’’ Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153 (1974) (quoting Miller v. Mackey Intl., Inc., 452 F.2d 424, 427 (5th Cir. 1971)). The District Court, in determining that individualized made-whole determinations were necessary here, erroneously delved into the merits of Diaz and Hoffmann-Bernhardt’s claim. In doing so, the District Court failed to recognize that there is no prerequisite for individualized, fact-specific determinations. The primary issue is whether the State’s act of exercising its exclusion before conducting a made-whole analysis violates Montana’s subrogation laws.
¶47 Like Ferguson, Diaz and Hoffmann-Bernhardt seek to enjoin an insurer-the State-from exercising its exclusion before it conducts a made-whole analysis. See Ferguson, ¶¶ 33-37. The declaratory relief sought here is whether Montana’s made-whole laws are being violated by the State’s act of accepting reimbursements from medical providers who have received payments from third-party insurers and/or act of refraining from paying medical bills that third-party insurers have already paid. ‘The challenge here is not to an error in [the State’s] application of the [made-whole] rule to any given insured. Rather, this case challenges the procedures of a program ... [the] class claims seek a declaratory ruling ... to compel [the State] to follow the legal standard in its subrogation program.” See Ferguson, ¶ 34.
¶48 As contemplated by Rule 23(b)(2), there is a common question presented for declaratory and injunctive relief, to which a single answer will affect all class members: Can the State, in compliance with §2-18-901 to -902, MCA, withhold payment of medical expenses or accept reimbursement of medical expenses paid by a third-party’s insurer before it conducts a made-whole analysis? Any individualized determinations regarding whether class members have been made whole will not occur in the context of this class action claim.

Rule 23(b)(3)

¶49 Because we have concluded the class is certifiable under Rule 23(b)(2), we need not address the parties’ arguments regarding Rule 23(b)(3).
*165 CONCLUSION
¶50 BCBS and New West, as TPAs in this case, are not subject to the made-whole laws as “insurers”under §§2-18-901 to -902, MCA, or under a third-party beneficiary theory. The District Court abused its discretion in denying class certification, as Diaz and HoffmannBernhardt have demonstrated the Rule 23 requirements are met.
¶51 We affirm in part and reverse in part and remand this matter to the District Court for further proceedings consistent with this Opinion.
CHIEF JUSTICE McGRATH, JUSTICES NELSON, COTTER and MORRIS concur.

 A third plaintiff, Rachel Laudon, and a third defendant, Montana Comprehensive Health Association, entered a settlement and are not parties to this appeal.

 This Court has previously acknowledged that federal authority is instructive on the issue of class certification because Rule 23 is identical to Federal Rule of Civil Procedure 23. Sieglock, ¶ 10.