JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Steve Sangwin is an employee of the State of Montana and a qualified subscriber and beneficiary of the State of Montana Employee Benefits Plan (Plan). Blue Cross and Blue Shield of Montana, Inc. (BCBS) administers the Plan. McKinley Sangwin, the daughter of Steve Sangwin and Amy Sangwin Wicks, is also a beneficiary under the Plan. This case arises out of a dispute over the denial of a preauthorization request for a medical procedure for McKinley on the grounds that the procedure was “experimental for research.” The State appeals the order of the Eighth Judicial District Court, Cascade County, granting the Sangwins’ motion for class certification. We affirm the court’s order defining the class, but reverse and remand with respect to the question certified for class treatment.
ISSUES
¶2 A restatement of the issues on appeal is:
¶3 1. Did the District Court abuse its discretion in certifying the class *133 under Rule 23(a), Montana Rules of Civil Procedure?
¶4 2. Did the District Court abuse its discretion in certifying the class under Rule 23(b), Montana Rules of Civil Procedure, and specifying for class treatment the question of whether the State breached its contract of insurance with the plaintiffs?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 Steve Sangwin is a teacher at the Montana School for the Deaf and Blind in Cascade County, Montana. As an employee of the State, Steve is a qualified subscriber and beneficiary of the Plan. Steve and Amy’s daughter, McKinley, is also a beneficiary under the Plan. McKinley was diagnosed with a severe degenerative disk disease, and when she was sixteen years old, her physicians recommended that she undergo artificial disk replacement surgery. The Sangwins requested preauthorization for the procedure from BCBS, the . Plan administrator. BCBS denied the request in an October 8, 2009 letter and explained that, because McKinley was a minor, BCBS considered the operation “investigational.” The Plan expressly excluded investigational procedures. The letter contained a reference to the exclusions and limitations section of the Employee Benefits Summary Plan Document, which stated: .“The following services and expenses are not covered: Services or procedures that are experimental procedures, as defined in Chapter 9, which are for research.”[1] Under Chapter 9, an experimental procedure or service is defined as a procedure or service that “is experimental, investigational, unproven, or not a generally acceptable medical practice in the predominate [sic] opinion of independent experts utilized by the administrator of each plan.”
¶6 The Sangwins appealed the decision to the BCBS Medical Review Staff. In a December 8, 2009 letter, BCBS explained that the Medical Review Staff and Associate Medical Director had reviewed the documentation related to the preauthorization request and had decided to uphold the original denial. The Associate Medical Director further clarified that artificial disks were not Food and Drug Administration approved for patients under the age of 18. The Sangwins then filed an appeal with the State of Montana. After a meeting of the Health Care and Benefits Division appeals committee on May 6,2010, the State upheld the denial, stating that there was “no *134 documentation from the Food and Drug Administration showing this procedure is appropriate for someone under the age of 18.” Thus, the State considered it an experimental or investigational procedure that was specifically excluded under the Plan. After the denial, the Sangwins nonetheless proceeded with the proposed surgery, which was successful, incurring medical bills exceeding $55,000.
¶7 On June 8, 2010, the Sangwins initiated this action by filing a complaint in the Eighth Judicial District Court, Cascade County. The Sangwins filed an amended complaint in November 2010 and set forth five counts. The only relevant count for the purposes of this appeal is the request for certification of a class action. The Sangwins alleged that McKinley’s artificial disk replacement surgery was not experimental or for research. They further alleged that BCBS and the State “have been denying the claims of participants and beneficiaries based on the experimental exclusion for research for years and years when the surgeries and other procedures were in no way meant for research and when, at best, the experimental exclusion for research is ambiguous and must be construed against Defendants.” The Sangwins defined class members as “other participants and/or beneficiaries of any such Plan in Montana which have had their employee benefits denied by the State of Montana based on the experimental exclusion for research” in the past eight years.
¶8 On September 20,2012, the District Court granted the Sangwins’ motion for class certification. On November 23, 2012, the District Court entered an order defining the class as:
“All persons who were participants, subscribers and/or beneficiaries of the State of Montana Employee Health Plan, including the State of Montana’s Blue Cross Blue Shield Managed Care Plan, the Traditional Indemnity Plan and any other health plan affiliated with the State of Montana, who have had medical benefits denied by BCBS and/or the State of Montana based on the contention that the benefits were experimental, investigational, unproven, or not generally acceptable medical practice under the language of the State of Montana Employee Benefits Summary Plan Document unless such medical benefits were ‘for research’ from January 1, 2003, through December 18, 2011. The class includes those individuals whose claims were denied prior to medical benefits being rendered as well as those individuals whose claims were denied after the medical benefits were rendered.”
The District Court certified four claims for class treatment, including *135 whether the State breached its contract, whether BCBS acted as an agent of the State and acted wrongfully, whether BCBS intentionally interfered with the contract between the State and Plaintiffs, and whether BCBS acted with malice. The District Court’s order directed BCBS and the State to provide the Sangwins’ counsel with the names and last known addresses of every potential class member.
¶9 On September 19,2012, the District Court granted the Sangwins’ motion for partial summary judgment and determined the Sangwins could pursue general tort damages against the State if they prevailed on their claim for breach of the covenant of good faith and fair dealing. That ruling is not subject to this interlocutory appeal. BCBS filed its notice of appeal on November 28, 2012, but later entered into a settlement with the Sangwins. BCBS is therefore not a party to this appeal. This being so, of the four issues certified for class treatment, the sole issue remaining so certified is whether the State breached its contract. The State filed its notice of appeal on December 6, 2012. The State challenges the District Court’s order certifying the class.
STANDARD OF REVIEW
¶10 We review a district court’s decision on a motion for class certification for an abuse of discretion. Chipman v. N. W. Healthcare Corp., 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. The question is not whether this Court would have reached the same decision, but whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. Chipman, ¶ 17 (quotation marks omitted). When reviewing a decision on class certification, we afford the trial court the broadest discretion because it “is in the best position to consider the most fair and efficient procedure for conducting any given litigation.” Jacobsen v. Allstate Ins. Co., 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452 (quoting Chipman, ¶ 17).
DISCUSSION
¶11 1. Did the District Court abuse its discretion in certifying the class under Rule 23(a), Montana Rules of Civil Procedure?
¶12 The class action is “an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.” Comcast Corp. v. Behrend,_U.S._,_, 133 S. Ct. 1426, 1432 (internal citation omitted). Departure from the usual rule is justified if the class representative is part of the class and has the same interest and injury as the class members. Jacobsen, ¶ 27. “[Cjlass action suits save the resources of courts and parties by permitting an issue *136 potentially affecting every [class member] to be litigated in an economical fashion ... .” Jacobsen, ¶ 27 (internal citation omitted).
¶13 The propriety of a class action is governed by Rule 23 of the Montana Rules of Civil Procedure. Because the Montana version of Rule 23 is identical to the corresponding federal rule, federal authority on the issue of class certification is instructive. Chipman, ¶ 43. Rule 23(a) sets forth four prerequisites necessary to sustain a class action:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
¶14 The party seeking certification bears the burden of establishing each element of Rule 23(a). Chipman, ¶ 43 (citation omitted). Failure to establish the requisite elements is fatal to class certification. Chipman, ¶ 43. In addition to satisfying the requirements of Rule 23(a), a party must satisfy at least one of the provisions of Rule 23(b). M. R. Civ. P. 23(b).
¶15 When deciding whether to certify a class, a district court should not assess any aspect of the merits unrelated to a Rule 23 requirement. Chipman, ¶ 44. It “may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.” Comcast Corp.,_U.S. at_, 133 S. Ct. at 1432 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S._,_, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted)). “[Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.” Comcast Corp.,_U.S. at_, 133 S. Ct. at 1432 (quoting Wal-Mart, 564 U.S. at _, 131 S. Ct. at 2551 (internal quotation omitted)). A “rigorous analysis” frequently entails some “overlap with the merits of the plaintiffs underlying claim” because the “class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiffs cause of action.” Comcast Corp.,_U.S. at_, 133 S. Ct. at 1432 (quoting Wal-Mart, 564 U.S. at_, 131 S. Ct. at 2551-52 (internal quotation marks omitted)). Actual, not presumed, conformance with Rule 23(a) is indispensable. Wal-Mart, 564 U.S. at_, 131 S. Ct. at 2551 (internal citation omitted).
¶16 In evaluating the Rule 23 requirements, the District Court properly looked beyond the pleadings to the extent necessary to *137 determine the propriety of class certification. The District Court reviewed numerous briefs, motions, objections, and over 150 of the proposed class members’ preauthorization request denial letters. The District Court also held a hearing on the motion for class certification where attorneys for the Sangwins, the State, and BCBS appeared and presented arguments. We hold that the District Court did not abuse its discretion in certifying this lawsuit as a class action. Each relevant aspect of the Rule 23(a) inquiry is discussed below in further detail.
A. Rule 23(a)(l)-Numerosity
¶17 The State does not dispute that the number of Plan participants, subscribers, or beneficiaries denied preauthorization requests for procedures that were allegedly experimental, investigational, unproven, or not generally acceptable meets the numerosity requirement. Rule 23(a)(1) requires a proposed class to be “so numerous that joinder of all members is impracticable.” “[Pjlaintiffs must present some evidence of, or reasonably estimate, the number of class members.” Diaz v. Blue Cross & Blue Shield, 2011 MT 322, ¶ 31, 363 Mont. 151, 267 P.3d 756. Though the parties dispute the number of potential class members and the requirements for inclusion in the class, the District Court concluded it was “clear that the numerosity element is met because the State and BCBS denied benefits based upon the ‘experimental for research’ exclusion in the State Plan and Managed Care Supplement Plan well over one-hundred times.” The District Court determined the large number of potential class members made joinder impracticable. We conclude the District Court did not abuse its discretion in concluding that the Sangwins have successfully satisfied the numerosity requirement.
B. Rule 23(a) (2)-Commonality
¶18 The State does not dispute that the commonality requirement is met. The element of commonality requires “questions of law or fact common to the class.” M. R. Civ. P. 23(a)(2). Though the requirement has historically placed a relatively low burden on plaintiffs, Jacobsen, ¶ 31, the U.S. Supreme Court “significantly tightened the commonality requirement” in Wal-Mart. Chipman, ¶ 47. The claims of class members and class representatives “must depend upon a common contention” that is “of such a nature that it is capable of classwide resolution,” “mean[ing] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Wal-Mart, 564 U.S. at_, 131 S. Ct. at 2551.
¶19 The District Court determined that the class members raised common questions of fact and law. The District Court identified both *138 a uniform course of conduct by the State and BCBS in denying benefits based upon the “experimental for research” exclusion and a common question of law of whether such denial was unlawful. The District Court concluded that the questions of fact and law raised by the Sangwins were sufficient to satisfy the commonality requirement and support class certification. Though the District Court relied upon the standard Montana followed prior to Wal-Mart, this requirement is met even under Wal-Mart’s more stringent standard. All class members are connected by the denial of a preauthorization request based on the same exclusion. These common facts are related to the ultimate resolution of the dispute, namely the determination of whether such denial was wrongful.
¶20 We conclude that the court correctly found that the class members are connected by the denial of a preauthorization request based upon the same exclusion, and that this common connection satisfies the commonality requirement. For the reasons set forth below, however, we do not agree that there exists a predominant question of whether the denial was wrongful.
C. Rule 23(a)(3)-Typicality
¶21 To satisfy the typicality element, a plaintiff must demonstrate that “the claims or defenses of the representative parties are typical of the claims or defenses of the class.” M. R. Civ. P. 23(a)(3). The typicality requirement is designed to ensure that the interests of the named plaintiffs align with the interests of the class members, “the rationale being that a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class.” Mattson v. Mont. Power Co., 2012 MT 318, ¶ 21, 368 Mont. 1, 291 P.3d 1209 (Mattson III) (citing Chipman, ¶ 53). Typicality is not a demanding standard, and a named plaintiffs claim is typical if it “stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory.” Diaz, ¶ 35 (quotation omitted; emphasis in original). The event, practice, or course of conduct need not be identical. Diaz, ¶ 35. The typicality requirement “tends to merge” with the commonality requirement. Jacobsen, ¶ 51 (internal citation omitted). It “prevents plaintiffs from bringing a class action against defendants with whom they have not had any dealings.” Jacobsen, ¶ 51 (citing Diaz, ¶ 35).
¶22 The District Court concluded the Sangwins successfully established typicality. It was irrelevant to the District Court that McKinley had surgery despite the preauthorization denial because the *139 Sangwins still suffered the same harm as the class members. The District Court found a patterned course of conduct similar to the course of conduct in Diaz. Typicality was satisfied in Diaz because the State’s practice of employing its exclusion to third-party liability coverage constituted an event, practice, or course of conduct that the class representatives shared with the class. Diaz, ¶ 36.
¶23 The State argues that the Sangwins mistakenly equate commonality with typicality, and that the facts behind the Sangwins’ claims are unique. Specifically, it notes that the Sangwins decided to go forward with treatment and incur medical bills, presumably unlike many potential plaintiffs, and that McKinley was the only underage patient for whom coverage was sought for implanting artificial intervertebral discs from 2003 to 2010. The State argues no typicality exists because the procedures denied by BCBS varied greatly and some denials were made properly. According to the State, this requirement is not met because each denial will require individual review.
¶24 The Sangwins contend “[t]he State has simply ignored the law on typicality under almost identical facts,” including our decision in Diaz. The Sangwins acknowledge that facts vary among the class members. For example, the amount of damages, the desired procedure, and the timing of the denial inevitably vary. However, they argue that the Sangwins had the same dealings with the State as the putative class members, and that they all were wrongly denied benefits under the same exclusion, an exclusion the State misconstrued and misapplied in the same manner for each claim. The Sangwins argue typicality is not destroyed by the individual assessment of damages or by some variation between the claims of the Sangwins and the class members. ¶25 In its reply brief, the State counters that the Sangwins mistakenly rely on Diaz when the issues and relief sought differ. The State again argues that the Sangwins’ decision to proceed with the surgery and incur medical bills destroys typicality. According to the State, the District Court did not engage in the required “rigorous analysis.”
¶26 The State misses the point of the typicality requirement by raising issues with the specific facts of the Sangwins’ claim. “Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.” Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The Sangwins are members of the class as defined by the District Court. McKinley was denied preauthorization for a medical procedure under the “experimental for research” exclusion. The Sangwins allege the State systematically applied the exclusion to *140 wrongfully deny benefits. The Sangwins’ claim is based on the same legal theory as the proposed class members’ claims. Despite the State’s contentions, the specifics of McKinley’s injuries or treatment do not render her atypical of the class. The District Court conducted a “rigorous analysis;” it probed beyond the pleadings and determined this element actually was met. We conclude the District Court did not abuse its discretion in concluding that the Sangwins have met the typicality requirement.
D. Rule 23(a)(4)-Adequate Representation
¶27 The State does not dispute that this requirement is met. Montana Rule of Civil Procedure 23(a)(4) requires that “the representative parties will fairly and adequately protect the interests of the class.” Adequate representation requires that the named representatives’ attorney is qualified, competent, and able to conduct the litigation, and that the named representatives’ interests are not antagonistic to the class interests. Chipman, ¶ 57 (citation omitted).
¶28 The District Court determined the law firm of Hoyt & Blewett PLLC was qualified and competent counsel. The District Court further determined the Sangwins’ interests were aligned with the class’s interests. We conclude that counsel will adequately representthe class, and that no conflicts exist between the Sangwins and the class members.
¶29 2. Did the District Court abuse its discretion in certifying the class under Rule 23(b), Montana Rules of Civil Procedure, and specifying for class treatment the question of whether the State breached its contract of insurance with the plaintiffs?
¶30 Having determined that the Rule 23(a) prerequisites are satisfied, we now turn our inquiry to Rule 23(b). The District Court determined that the proposed class met the two requirements of Rule 23(b)(3). It is on the basis of the requirements of this rule that we reverse and remand with respect to the certified question.
¶31 Rule 23(b)(3) requires a court to “find[] that the questions of law or fact common to the class members predominate over any questions affecting only individual members.” In addition, a court must find that “a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” M. R. Civ. P. 23(b)(3). Matters pertinent to these findings include the class members’ interests in individually controlling separate actions, the extent and nature of any already existing litigation concerning the controversy, the desirability or undesirability of concentrating the litigation in a particular forum, and likely difficulties in managing a class action. M. R. Civ. P. *141 23(b)(3)(A)-(D). A central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy. Mattson III, ¶ 39 (citing Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation omitted)).
¶32 The District Court determined class certification was appropriate because class members may not have the knowledge or resources to bring the claims individually or may be subject to the requirement of exhausting administrative remedies prior to seeking judicial relief. The District Court noted that there was no other litigation concerning the issue, and that a class action suit would be conducive to complex healthcare litigation. After acknowledging the existence of individual issues, such as damages, the District Court concluded that common questions of law or fact nonetheless predominated because BCBS and the State engaged in systematic conduct and the Sangwins and the class members suffered the same or similar injuries.
¶33 The State argues the District Court failed to make any findings of fact for Rule 23(b)(3) purposes. The State contends that common issues do not predominate because there were 158 temporally different decisions, and preauthorization denials and damages will need to be investigated individually.
¶34 The Sangwins contend that individual calculation of damages should not preclude class determination when common liability issues predominate. They further argue the District Court’s finding was supported by its “determination that the State’s systematic conduct of misconstruing the exclusion and denying claims under the same exclusion is the predominant issue of law and fact and that Sangwin and every putative plaintiff suffered a similar injury.” The State counters that the District Court only superficially analyzed the predominance factors and failed to meet the federal standard set forth in Wal-Mart and Comcast.
¶35 As indicated, the Sangwins contend the court properly certified the question of whether the State breached its contract with the plaintiffs, and that common liability issues predominate. In this connection, they maintain in their response brief that “[i]f individuals’ claims were properly denied because the medical service was ‘for research,’ those members will not be a part of the class specially defined by the [District Court.]”
Otherwise stated, only those individuals whose requested services were not for research will remain in the class, and the court can then decide if the denial of services to these persons constituted a breach of contract. Herein lies the problem with the question certified by the *142 District Court for class resolution.
¶36 In order to make the determination of whether an individual’s claims were properly denied, each claim-together with its underlying documentation including the Consent Form and supporting affidavits-will have to first be separately analyzed. As the Sangwins concede, this will have to be done before there can be a determination as to whether the individual will be part of the class, and it will clearly have to be done before there can be an assessment of whether the State breached its contract with that individual.
¶37 Because factual questions must be answered on an individual basis before the plaintiffs will be in a position to establish liability, the predominance requirement under Rule 23(b)(3) is not met. In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig., 2013 U.S. Dist. LEXIS 126028, 30-39 (D. Mass., Sept. 4, 2013) (where factual questions are not susceptible to routine resolution and must be answered on an individual basis before the plaintiffs can establish liability, predominance is not satisfied). Again, Rule 23(b)(3) requires a court to “find[] that the questions of law or fact common to the class members predominate over any questions affecting only individual members.” Common issues must therefore be more prevalent than individual issues. While we agree with the plaintiffs that the necessity to assess damages on an individual basis does not necessarily defeat class action treatment, here there is undeniably a preliminary need for an individual determination of whether each individual qualifies as a class member. As we observed in Chipman, ¶ 48, class determination is appropriate when the class members’ claims “depend on a common contention that is capable of classwide resolution.” The question certified by the District Court is whether the State breached its contract with the plaintiffs. This question cannot be answered until after individual assessments are made; therefore, the certified question is incapable of being resolved on a classwide basis.
¶38 This is not to say that the class itself was improperly certified. Rather, it is the formulation of the certified issue that results in individual issues predominating over common questions. There is seemingly one common issue of law critical to the entire class, and that is the construction of the State Plan’s exclusion language. The construction of the language in the exclusion and definitions sections of the Plan may well present a common issue of law that would be appropriate for class consideration. However, it is not the province of this Court to formulate the certified question.
¶39 For the foregoing reasons, we decline to disturb the District *143 Court’s certification of the class under the Rule 23(a). However, we reverse the District Court’s certification of the plaintiffs’ claim as to “[wjhether the State of Montana breached its contract” because it fails to satisfy the predominance requirement of Rule 23(b)(3). We remand to allow the District Court to consider whether a particular issue may be certified for which individual questions would not predominate.
CONCLUSION
¶40 Affirmed in part and reversed in part.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT, BAKER and MORRIS concur.

 In December 2011, the State revised its Employee Benefits Summary Plan Document to eliminate the phrase “which are for research.”